UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JEFFERY LEE SANDERS,

                Plaintiff,                                Case No.  1:15-cv-01268

v.

                                              HON. ELLEN S. CARMODY

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/

## OPINION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (ECF No. 9.)

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed.**

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be

2

reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was fifty-four years of age on the date of the ALJ's decision. (PageID.371, 499, 507.) He possesses a high school education and previously worked as a sandblaster, paint helper, concrete finisher, and labor helper. (PageID.473–474.) Plaintiff previously applied for DIB on October 30, 2009. That application resulted in an unfavorable determination by an administrative law judge (ALJ) on July 15, 2011, and does not appear to have been further pursued. (PageID.483–498.) The application in the instant case was filed by Plaintiff on April 24, 2012. (PageID.499, 507, 608–617.) Plaintiff alleged that he had been disabled since September 15, 2011, due to seizures. (PageID.499, 507.) Plaintiff's applications were denied on October 1, 2012, after which time he requested a hearing before an ALJ. (PageID.520–529.) On August 6, 2013, Plaintiff appeared with his counsel before ALJ Joseph Doyle for an administrative hearing at which time Plaintiff, his girlfriend, and a vocational expert (VE) all testified. (PageID.438–481.) At the hearing, Plaintiff's counsel requested that the record be held open after the hearing for the submission of additional documents. Thereafter, Plaintiff requested a second hearing to explain alleged discrepancies in those records. (PageID.720–721.) A supplemental hearing was held on June 16, 2014, with testimony provided by Plaintiff and his girlfriend. The ALJ did not take additional VE testimony. (PageID.407–437.) In a written decision dated July 25, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.371–405.) On October 14, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.29–35.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

3

**ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen.* 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v.*

---

[1]1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.    An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.    If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.    If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (noting that the ALJ determines RFC at step four, at which point the claimant bears the burden of proof).

The ALJ determined that Plaintiff's claim failed at step four. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of September 15, 2011. (PageID.376.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) seizure disorder; (2) hypertension; and (3) polysubstance abuse including alcohol and cannabis abuse. (PageID.377–380.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.380–382.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: can never climb ladders, ropes or scaffolds; can occasionally climb stairs and ramps; should avoid all exposure to operational controls of moving machinery and unprotected heights.

(PageID.382.) Continuing with the fourth step, the ALJ posed the above RFC in a hypothetical question to the VE. In response to the ALJ's questioning, the VE testified that Plaintiff was able to return to his past relevant work as a sandblaster. (PageID.474–475.) Relying on the VE's testimony, the ALJ determined that Plaintiff was capable of performing this work both as it was generally and as it was actually performed. (PageID.397.) Having made his determination at step four, the ALJ completed the analysis and was not required to go further. However, the ALJ also included an alternative step five determination, noting that considering Plaintiff's age, education,

5

work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform. (PageID.397.) In doing so, the ALJ again relied on VE testimony. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as a marker (9,000 regional jobs and 271,000 national jobs), inspector (22,000 regional jobs and 454,000 national jobs), and assembler of small parts (8,000 regional jobs and 218,000 national jobs). (PageID.476.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.398.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from September 15, 2011, the alleged disability onset date, through July 25, 2014, the date of decision. (PageID.398–399.)

## DISCUSSION

### 1.      The ALJ's Analysis of Dr. Toya Malone's Opinion.

On November 11, 2013, Dr. Toya Malone, M.D., signed a statement regarding her opinion of Plaintiff's impairments. (PageID.1135–1138.) Among other things, she noted she had observed Plaintiff experience four complex partial seizures and two other episodes consistent with panic attacks. (PageID.1135.) She stated that Plaintiff met the requirements of Listing 11.02, further noting that based on Plaintiff's reports of experiencing two to three seizures a month, he met the listing's frequency requirement. (PageID.1135.) She found Plaintiff's reports were "not inconsistent" with what was recorded while he was monitored. (PageID.1136.) When asked about the non-epileptic panic attacks, Dr. Malone reported these episodes "can be" disruptive of a person's functioning. His panic attacks were more prolonged than his seizures, and she "would suspect that

6

in his everyday environment these would probably have more of an impact than his complex partial

seizures." (PageID.1136.)  She went on to provide several limitations including:

> [T]he standard seizure precautions which include the Michigan State
> law which says that he can't drive for six months if he has a loss of
> awareness or loss of consciousness.  I always advise patients that they
> should avoid engaging in any activity that could cause harm to
> themselves or to someone else if they were to lose awareness or
> consciousness.  So that would include things like working with heavy
> machinery, navigating heights, working with sharp objects that could
> lead to dismemberment.  Those would be standard.  In terms of what
> I would tell his employer, I would want his employer to know that
> because seizures are unpredictable he may have a seizure while at
> work requiring him to take a bit of time away from his task.  He may
> also be confused during that time and during his postictal periods.

(PageID.1137.)  Dr. Malone further noted that after his recorded seizures, Plaintiff was "quite

confused and provided inappropriate responses to the nurses for at least 10 minutes."

(PageID.1137.)  She could not, however, predict how long his confusion would last following future

episodes, and further noted that the postictal period can vary between episodes.  That said, she stated

"on average he may return to baseline within an hour" but she restated that it was unpredictable how

long Plaintiff would take to return to his previous state.  (PageID.1137.)  Finally, she opined Plaintiff

had an increased in the risk of having memory loss which may impair his ability to perform at work.

(PageID.1137.)  Plaintiff claims the ALJ gave insufficient weight to these opinions.

By way of background, the treating physician doctrine recognizes that medical

professionals who have a long history of caring for a claimant and his maladies generally possess

significant insight into his medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.

1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1)

the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case

record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.*  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.*  (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Id.* at 376–77.  The ALJ discussed Dr. Malone's opinion at length:

> Little weight was afforded to the opinion of treating provider, Dr. Malone, who concluded that the claimant's seizure condition met Listing 11.02. (Ex. 19F) She noted that the claimant was still having 2-3 seizures per month as of August 2013. (Ex. 10F/1) Yet, on closer inspection of the record, the claimant actually admitted in mid-August that he had been seizure-free since his July 4th hospitalization.

8

(Ex. B16F/5) Moreover, the claimant had been using drugs and alcohol prior to that hospitalization, evidence of non-compliance. (Ex. B13F/4) Further, as of the late October report, the claimant had only suffered one seizure since his July hospitalization, aside from activity observed during an August study when the claimant was purposefully taken off his medication for video monitoring. (Exs. B17F/13 and B25F/12) Thus, Dr. Malone's conclusion that the claimant met Listing 11.02 was not supported by the record, and thus, received little weight. Further, Dr. Malone opined that the claimant might be off-task in a work setting due to unpredictable seizures. (Ex. B19F/3) She added that the claimant might also be confused and experience memory loss after a seizure. (Ex. B19F/3)

Notably, Dr. Malone had video monitored the claimant in August, observing seven seizures and a period of confusion following the seizures. (Ex. B17F/12) However, the claimant had been purposefully taken off medication for that study. (Ex. B17F.12) In addition, Dr. Malone noted two episodes of nausea, confusion and restlessness. (Ex. B16F/1) Yet, these episodes were not seizures. (Ex. B16F/1) It was also noted that the claimant's blood pressure was very high as of this date. (Ex. B16F/3) Further, the claimant had demonstrated intact memory on a number of exams throughout the record.. (Exs. B5F/8; B13F/18; B11F/3 and B14F/1) In addition, the claimant regularly care for his young son while his girlfriend worked, [an] indication that his girlfriend considered him able to focus and able to remain oriented and alert. (August 2013 Hearing Testimony) Further, while Dr. Malone suggest that the claimant was compliant with his medication, the underlying record suggested periods of non-compliance and polysubstance abuse. (Ex. B13F/17; B16F/5, 7; B4F/17; B6F/1; B12F/5 and B13F/4)

Moreover, Dr. Malone's statements regarding potential memory loss, confusion and off-task behavior were also speculative in nature. There had been no evidence of any sustained memory loss. Moreover, the confusion Dr. Malone observed after seizures, was noted during a study where the claimant was taken off his medication. (Ex. B17F/12) In addition, while Dr. Malone stated that the claimant did not have nocturnal seizures, the claimant had testified that his seizures were mainly nocturnal. (Ex. B19F/2) He also reported nocturnal seizures within the record. (Ex. B14F/3) Overall, Dr. Malone's statements regarding seizure frequency and treatment compliance and her denial of any nocturnal episodes suggested that she was not fully aware of the claimant's entire seizure history, particularly regarding non-compliance matters. Ultimately,

the evidence failed to support Dr. Malone's opinion regarding off-task behavior, memory loss and confusion. Thus, these statements received little weight.

Still, significant weight was afforded to Dr. Malone's opinion that the claimant should avoid driving and use of other potentially harmful machinery. (Ex. B19F/2-3) These standard hazard restrictions were well-supported by the claimant's long history of seizure disorder, and thus, received significant weight.

(PageID.395.) The ALJ's reasoning here is well supported. As an initial matter, the ALJ was not required to give Dr. Malone's opinion that Plaintiff met Listing 11.02 any special significance. *See Saucier v. Comm'r of Soc. Sec.*, 552 F. App'x 926, 928 (11th Cir. 2014); *see also Vardon v. Colvin*, No. 5:13–cv–2531, 2015 WL 1346851, at *13 (N.D. Ohio March 23, 2015) ("The issue of whether a claimant meets the requirements of a Listing, like the ultimate issue of disability, is not a medical determination but rather a dispositive administrative finding reserved to the Commissioner.") (citing 20 C.F.R. § 416.927(e)). The ALJ must still, however, "consider" these opinions. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ gave sufficient consideration here. Listing 11.02 requires convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:

A.    Daytime episodes (loss of consciousness and convulsive seizures) or

B.    Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02. Here, Dr. Malone admitted that the frequency of Plaintiff's seizures was per the reports from Plaintiff and his family members. (PageID.1136.) But, as the ALJ remarked, Plaintiff had provided numerous other statements which demonstrate his

seizures were not occurring with the requisite frequency. (PageID.666, 933, 1152) The ALJ also correctly observed Plaintiff disregarded his doctors' admonitions to curtail or cease his alcohol and marijuana use and accordingly was not following prescribed treatment. (PageID.395, 808, 899, 933, 1151.) The ALJ accordingly gave sufficient consideration to this portion of Dr. Malone's opinion.

Indeed Plaintiff does not spend much effort arguing with the above aspect of the ALJ's decision. Rather, he extensively argues the ALJ should have adopted Dr. Malone's opinion regarding his confusion, memory loss, and off-task behavior. (PageID.1360–1362.) Plaintiff alleges, for example, the ALJ erred by referencing his continued marijuana use because there is no evidence marijuana triggers his seizures. It appears he also alleges the ALJ improperly inferred his symptoms were different when he was off medication than when he was following his prescribed treatment. (PageID.1361.) The problem with Plaintiff's argument is, even assuming he is correct, the Court finds no reversible error here. As the ALJ observed, Dr. Malone's statements regarding Plaintiff's postictal state provide little by way of functional limitations and are so speculative and vague it is impossible to find they are in anyway inconsistent with Plaintiff's RFC. (PageID.395.) There are statements about Plaintiff becoming "confused" and that he loses time. (PageID.1136.) He "may" have a seizure at work that would require him to "take a bit of time" off task. (PageiD.1137.) How long he would be confused was "unpredictable." (PageID.1137.) There was an increased risk of memory loss (PageID.1137), but as the ALJ observed, Plaintiff consistently demonstrated an intact memory. (PageID.820, 874, 947, 970.) None of these are in anyway inconsistent with the RFC. Those functional limitations that the doctor did provide were given significant weight. (PageID.395.)

In short, the ALJ provided good reasons, supported by substantial evidence, for

assigning little weight to these portions of Dr. Malone's opinion and in doing so properly considered the factors enumerated in 20 C.F.R. §§ 404.1527(c), 416.927(c): primarily, whether the doctor's opinion was consistent with the record and supported by medical signs and laboratory findings. Regardless of the other factors which the regulation required the ALJ to consider—such as Dr. Malone's speciality and the length, nature and extent of the treatment relationship, 20 C.F.R. §§ 404.1527(c), 416.927(c)—the evidence mentioned thus far provide substantial evidence for the ALJ's decision to accord Dr. Malone's opinion little weight. No matter how long Dr. Malone had been treating Plaintiff or how familiar she was with his treatment history, the record supports the ALJ's findings that the doctor's opinion was not well supported and was speculative. The Court does not doubt that Plaintiff is limited because of his impairments, but such limitations are adequately accounted for in the RFC. Accordingly, this claim of error is denied.[2]

### 2.    The ALJ's RFC Determination is Supported by Substantial Evidence.

Plaintiff next contends that the RFC determination is not supported by substantial evidence because it did not sufficiently acknowledge the limitations that his seizures would cause if he was attempting substantial gainful activity on a full time basis. (PageID.1363–1364.) A claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996); *see also*

---

[2] Plaintiff adds an additional argument that because the agency consultants did not have access to the entire record, the ALJ erred in assigning greater weight to their opinions than to the opinion of his treating physician. (PageID.1362.) "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted). The ALJ gave sufficient indication here, explicitly noting in his discussion of the consultants' opinion that " in light of the evidence of a whole" a slightly more restrictive RFC determination was appropriate. (PageID.394.)

*Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 116 (6th Cir. 2010). The ALJ's conclusion that Plaintiff can perform a wide range of light work on a regular and continuing basis is supported by substantial evidence.

Plaintiff first claims the ALJ's RFC "does not account for medical evidence in the record as to the number of grand mal or psychomotor seizures." (PageID.1363.) Plaintiff fails to demonstrate how this should compel a different result. As discussed above, the evidence more than supports the ALJ's determination that Plaintiff did not satisfy Listing 11.02. Similarly, the ALJ's RFC discussion provides a lengthy discussion of Plaintiff's seizures, but nonetheless finds him capable of work. This is supported not only by Plaintiff's own admissions, but the opinions of Dr. Lawrence Churchville and Dr. Saadat Abbasi, both agency medical consultants. (PageID.505, 833–841.) "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12-cv-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I)); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). As noted in the above footnote, the ALJ did not err in assigning these opinions significant weight.

Plaintiff also contends the ALJ erred in emphasizing his alcohol and marijuana usage, claiming the ALJ was playing doctor by stating that cessation of substance abuse would cure his seizures. (PageID.1365.) The ALJ said no such thing. There is extensive documentation in the record that Plaintiff continued to abuse alcohol and marijuana despite repeated admonitions from his physicians. The ALJ did not note this fact to allege Plaintiff's seizures were caused by those substances, but rather to note Plaintiff's behavior was one of continued noncompliance with his

prescribed treatment.  The Court discerns no error here.

As for Plaintiff's argument that the ALJ's RFC fails to sufficiently account for his non-severe mental impairments, the Court is not persuaded.  While the record reveals that Plaintiff suffers from certain emotional impairments, the evidence does not suggest that such impair Plaintiff to a greater degree than is reflected in the ALJ's RFC.  As Plaintiff correctly notes, he was twice hospitalized for feelings of anger, confusion, and depression.  (PageID.913–927, 1141–1144.)  He was treated with medication and advised to no longer abuse substances.  (PageID.913, 1142.)  Presently, Plaintiff does not appear to be following this treatment plan, but he does not appear to be undergoing any treatment for his mental conditions either.  Moreover, Plaintiff fails to point to any limitation inconsistent with the RFC.  The record demonstrates Plaintiff was able to watch sporting events with friends and follow spoken instructions.   (PageID.675–676.)  Despite Plaintiff's complaints, the record, as discussed above, demonstrates he had an intact memory.  He also had normal concentration.  (PageID.1091, 1094, 1150.)

For these reasons, Plaintiff has not undermined the ALJ's assessment of his RFC. This argument is accordingly rejected.

### 3.    The ALJ's Determination Plaintiff Could Return to His Past Relevant Work is Supported by Substantial Evidence.

Finally, Plaintiff contends that the ALJ "failed to discuss the demands of Claimant's past work . . . The issue of whether Claimant could – with the RFC provided – perform his past relevant work is completely speculative." (PageID.1365.)  Plaintiff presents no clear discussion on this matter or authority for his proposition, and accordingly has waived this argument.   "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most

14

skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); accord *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[P]laintiff develops no argument to support a remand, and thus the request is waived.").  Even if the Court were to cobble together an argument, such would fail.  As noted above, the ALJ relied on VE testimony to determine Plaintiff could return to his past work as a sandblaster.  Vocational expert testimony is not required at step four of the sequential analysis.  *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 544–45 (6th Cir. 2007); *see also* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). However, the ALJ may use a vocational expert's services in determining whether a claimant can perform her past relevant work.  20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.").  It is common practice for an ALJ to rely upon a VE's testimony at step four of the sequential analysis.  *See, e.g.*, *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002).  Here, in response to the ALJ's hypothetical, the ALJ noted that Plaintiff could return to his past work as a sandblaster, as it was unskilled work at the medium exertional level.  (PageID.474.)  Accordingly, substantial evidence supports the ALJ's step four determination that this work did not require the performance of activities that were precluded  by Plaintiff's RFC.  (PageID.397.)

Finally, Plaintiff points out that the VE responded to additional questioning that if Plaintiff were to miss work two or more times a month, be off task fifteen percent of the day, or had five or more unexcused absences a year, it would preclude all work. (PageID.1366.)  But this

testimony does not affect the ALJ's determination. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) ("An ALJ is only required to incorporate into a hypothetical question those limitations he finds credible."); *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is [ ] 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.' ") (quoting *Casey*, 987 F.2d at 1235). The hypothetical question the ALJ posed to the VE was accurate and was not required to include the other unsubstantiated limitations. This claim is rejected.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Date:  February 23, 2017                    /s/ Ellen S. Carmody
                                           ELLEN S. CARMODY
                                           United States Magistrate Judge

16